IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-03240-LTB-BNB

TONYA ISENBART,

       Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF KIT CARSON COUNTY,
    a body corporate and politic,
TOM RIDNOUR, in his individual capacity,
ROBERT FURROW, in his individual capacity, and
WILLIAM KORBELIK, a private citizen,

       Defendants.
_____

ORDER
_____

This matter is before me on motions to dismiss filed by the Defendants seeking dismissal of the claims asserted against them by Plaintiff, Tonya Isenbart; specifically, I address: 1) Defendant [Sheriff Tom] Ridnour's Motion to Dismiss [**Doc #21**]; 2) Undersheriff Robert Furrow's Motion to Dismiss [**Doc #22**]; 3) Defendant Board of County Commissioners of Kit Carson County's Motion to Dismiss [**Doc #19**]; and 4) Defendant William Korbelik's Motion to Dismiss [**Doc #20**]. Oral arguments would not materially assist me in my determinations. After consideration of the parties' arguments, and for the reason stated, I GRANT the motions and I DISMISS this case.

**I. Facts**

The following are facts as alleged by Plaintiff in her Amended Complaint. [Doc # 7] Plaintiff was employed, starting in September 2007, as the Victim Advocate Program Director for Defendant Kit Carson County. She reported to Kit Carson County Sheriff, Ed Raps. In

March of 2009, Plaintiff informed her then-husband, Defendant William Korbelik, that she intended to seek a divorce.  Soon thereafter, she began dating Joe Isenbart – who was, at the time, the Undersheriff of Kit Carson County – and informed Sheriff Raps of their relationship.  In October of 2009, Plaintiff and Mr. Isenbart moved in together and "intended to create a familial relationship."

Plaintiff alleges that sometime in 2010, Defendant Korbelik "persuaded [Defendant] Tom Ridnour to run against Sheriff Raps in the August 2010 Republican primary election" and in so doing convinced Defendant Ridnour that, if elected, he should terminate Plaintiff and Mr. Isenbart.  Defendant Ridnour ultimately won the election for Sheriff of Kit Carson County.  In mid-November Mr. Isenbart asked Defendant Ridnour whether he would have a job when Ridnour became the Sheriff, and he responded that either Mr. Isenbart or Plaintiff would "have to go."  As a result, Mr. Isenbart tendered his resignation as Undersheriff.

Defendant Ridnour then became Sheriff of Kit Carson County on January 12, 2011, and appointed Defendant Robert Furrow to the position of Undersheriff.  Three days later, on January 15, 2011, Plaintiff "provided the County with a document informing it that [she] and Joe Isenbart considered themselves married" as of that date.

On March 3, 2011, Defendant Undersheriff Furrow informed Plaintiff that he had decided to terminate her.  Plaintiff appealed the decision to Defendant Sheriff Ridnour, who upheld her termination.  Plaintiff asserts that the purported grounds for her termination were pretextual, and that her termination was in fact improperly motivated by her relationship with Mr. Isenbart.

In her amended complaint, Plaintiff asserts a federal claim for Violation of Substantive

Due Process pursuant to 42 U.S.C. §1983 ("§1983").  Specifically, Plaintiff asserts that by entering into an "intimate dating, marital, and familial relationship" with Mr. Isenbart, Plaintiff "created a relationship protected as a fundamental right or liberty interest under the substantive due process clause" of the Fourteenth Amendment.  And, "by subjecting Plaintiff to unjustified discipline and termination, Defendants intended to interfere with her [protected] relationship with Joe Isenbart."  She asserts that Defendants' decision to discipline and terminate her "was motivated by her exercise of the fundamental right to intimate association" and that "no compelling governmental interest was present to justify the discipline and discharge of Plaintiff because of her intimate relationships."   In addition, Plaintiff also asserts state law claims against Defendants for:  Intentional Interference with Contract; Intentional Interference with Prospective Business Advantage; Civil Conspiracy; and Violation of Lawful Off-Duty Activity State (Colo. Rev. State § 24-34-402.5).  Defendants have filed the motions to dismiss at issue here in which they contend that Plaintiff's federal claim asserted under §1983 must be dismissed and, in turn, her remaining claims be dismissed on the basis that I should decline to exercise supplemental jurisdiction over her state law claims.

## II. Defendants Sheriff Ridnour & Undersheriff Furrow

In their motions, Defendant Sheriff Ridnour and Undersheriff Furrow assert that Plaintiff's §1983 claim asserted against them must be dismissed based on their defense of qualified immunity.  The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(*quoting Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).

Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010)(*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). A plaintiff can overcome the presumption of immunity only by carrying the heavy burden of showing both that: (1) the defendant in question violated one of her constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011)(*quoting Ashcroft v. al–Kidd*, __ U.S.__, 131 S.Ct. 2074, 2080, 2083, 179 L.Ed.2d 1149 (2011)). Failure to show either qualified immunity element is fatal to the plaintiff's cause. *Kerns v. Bader, supra,* 663 F.3d at 1180.

A. Whether Defendant Violated A Constitutional Right

In applying the two-part qualified immunity analysis, I first address the question of whether Plaintiff adequately alleged that Defendants Ridnour and Furrow acted to violate Plaintiff's federally protected rights. In doing so, I "consider[ ] whether the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right" cognizable under §1983. *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). Thus, I first determine whether Defendants' actions – in terminating Plaintiff's employment allegedly because of her relationship with Mr. Isenbart – violated her right to freedom of intimate association.

Title 42 U.S.C. §1983 provides that "[e]very person who, under color of any statute . . .

subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of liberty without due process of law and, as relevant here, it protects the right to the freedom of intimate association as "an intrinsic element of personal liberty."  *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984) (recognizing that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State"); *see also Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1188-89 (10th Cir.1985).

It is beyond dispute that a marital relationship constitutes an intimate association.  *See Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974).  In addition, the right of familial association is a substantive due process right, as recognized by the Tenth Circuit in *Trujillo v. Board of County Commissioners, supra,* 768 F.2d at 1188-89.  *See also Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993)("[t]he freedom of intimate association is a substantive due process right, as is its subset, the familial right of association").  However, the Supreme Court has indicated that the right of association does not include a generalized right of social association.  *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed2d 18 (1989).

The question here is whether Plaintiff adequately alleged that her federally protected right to the freedom of intimate association was violated by the actions of Defendants Ridnour and Furrow in terminating her based on her relationship with Mr. Isenbart.  My review of

Plaintiff's amended complaint is that she did.  Specifically, she alleged that the freedom of intimate association is a fundamental liberty interest protected by the due process clause.  And, by entering into "an intimate dating, marital, and familial relationship" with Mr. Isenbart, Plaintiff pleads that she created a such a relationship.  Furthermore, she alleged that by subjecting her to unjustified discipline and termination, Defendants Ridnour and Furrow intended to interfere with her relationship with Mr. Isenbart and that they were motivated by her exercise of the fundamental right to intimate association. [Doc #7]  While I agree with Defendants that the assertions set forth in Plaintiff's complaint are often conclusory, and may be inaccurate or incomplete, when they are viewed in the light most favorable to the Plaintiff, I find that her complaint alleges that Defendants Ridnour and Furrow violated Plaintiff's federally protected right by terminating her because of her relationship with Mr. Isenbart.

B.  Whether the Right Was Clearly Established

Having determined that the complaint adequately alleges that Defendants Ridnour's and Furrow's conduct violated Plaintiff's constitutional right to intimate association, I now reach the second prong of the qualified immunity analysis; specifically, whether the constitutional right she alleges was violated was, at the time of the incident, clearly established.  The law is "clearly established" if a reasonable official in the defendant's circumstances would understand that his or her conduct violated the plaintiff's constitutional right.  *Moore v. Guthrie,* 438 F.3d 1036, 1042 (10th Cir. 2006); *see also Suasnavas v. Stover*, 196 Fed.App'x. 647 (10th Cir. 2006)(not selected for publication).

Whether a right is clearly established is an objective test.  *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)( "[t]he relevant, dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). A right is considered "clearly established" if Supreme Court or Tenth Circuit case law exists on point, or if there is a "robust 'consensus of cases of persuasive authority.'" *Ashcroft v. al-Kidd*, *supra*, 131 S.Ct. at 2084 (*quoting Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). While a case directly on point is not required, existing precedent must have placed the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, *supra*, 131 S.Ct. at 2083.

The question here, then, is whether the intimate relationship alleged by Plaintiff with Mr. Isenbart was one that was clearly established as protected by substantive due process under the Fourteenth Amendment. In her amended complaint, Plaintiff alleges that she was improperly terminated "because of her intimate dating, marital, and familial relationship with former County Undersheriff Joe Isenbart." [Doc # 7, ¶1] The factual allegations related to this relationship and Plaintiff's termination were that soon after telling her husband she would be seeking a divorce in March of 2009, she "began dating" Isenbart. [¶11 & ¶12] Then, in October of 2009, they moved in together and "[b]y living together, [they] intended to create a familial relationship." [¶14]

She further alleges that Defendant Ridnour agreed, sometime prior to August of 2010, that he would terminate Plaintiff if his run for Sheriff was successful. [¶15] On January 12, 2011, Defendant Ridnour became Sheriff and Defendant Furrow became Undersheriff, and "Ridnour disclosed to Furrow his intention to terminate [Plaintiff] because of her relationship with Mr. Isenbart," and Furrow "agreed to go along with the termination." [¶22 & ¶24] Then, "[o]n or shortly after January 15, 2011, [Plaintiff] provided the County with a document informing it that [Plaintiff ]and Joe Isenbart considered themselves married as of January 15,

2011." [¶25]  Plaintiff was subsequently terminated effective March 8, 2011. [¶36]

Plaintiff accurately asserts that marital and some familial relationships are clearly established as intimate associations entitled to substantive due process protection under *Roberts v. U.S. Jaycees, supra*.  However, to the extent she asserts that her relationship with Mr. Isenbart was marital, Plaintiff's allegations are conclusory and deficient.  Specifically, Plaintiff alleges that after Defendants Ridnour and Furrow became Sheriff and Undersheriff, but prior to her termination she "provided the County with a document informing it that [Plaintiff] and Joe Isenbart considered themselves married as of January 15, 2011."   However, Plaintiff specifically does not allege that at that time she was no longer married to Defendant Korbelik.  While Colorado recognizes common law marriages, *see* Colorado Rev. Stat §14-2-104(3), Plaintiff's complaint is clearly devoid of an allegations related to the timing of the dissolution of her marriage to Defendant Korbelik and, thus, is insufficient to support a martial relationship.  See Colo. Rev. Stat § 14-10-111( g)(I)(a marriage is prohibited by law when it is "entered into prior to the dissolution of an earlier marriage of one of the parties").  Furthermore, the complaint indicates that at the time the decision was made to terminate Plaintiff based on her relationship with Mr. Isenbart – "sometime in 2010" – they were either only dating or were living together with the intent "to create a familial relationship."  Thus, the question here is whether such relationship was one that was clearly established by the law as protected by substantive due process.

In arguing that it was, Plaintiff cites to *Trujillo v. Board of County Commissioners*, *supra*, in which the Tenth Circuit reviewed the legal parameters of liberty interests in familial relationships and found that the plaintiffs in that case – a mother and sister – had constitutionally

8

protected interests in their relationship with their adult son and brother. 768 F.2d at 1188-89; *see also Suasnavas v. Stover, supra*, 2006 WL 2458678, 9 (addressing the right to associate with children and grandchildren). In a footnote, the Tenth Circuit indicated that "the familial relationships in this case do not form the outer limits of protected intimate relationships," as "a broad range of human relationships . . . may make greater or lesser claims to constitutional protection," requiring "a careful assessment of where [a particular] relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." *Trujillo v. Bd. of County Comm'rs*, *supra,* 768 F.2d at 1189 FN. 5 (*quoting Roberts v. U.S. Jaycees, supra,* 468 U.S. at 620). "Those characteristics which would indicate a protected association include smallness, selectivity, and seclusion." *Id.*

There is no Tenth Circuit law, however, that applies this standard to a dating or co-habitating romantic relationship. I reject Plaintiff's argument to the extent she maintains that *Trujillo v. Board of County Commissioner, supra,* clearly established that dating relationships are protected associations when the Court held that associations other than marriage could be protected, and then cited to an Eleventh Circuit case that so held. 768 F.2d at 1188 (noting that courts have recognized liberty interests in familial relationships other than strictly parental ones, and citing as one example *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir.1984), as finding interference with a dating relationship actionable under §1983). I likewise reject Plaintiff's argument to the extent she asserts that *Seegmiller v. LaVerkin City,* 528 F.3d 762, 769 (10th Cir. 2008), recognized a fundamental liberty interest protecting the right to sexual privacy for a brief extra-martial affair. In that case, after noting that the Supreme Court has never endorsed a substantive due process right to sexual privacy, the Court rejected the terminated employee's

claim that she had a broad-based fundamental right to engage in private sexual conduct entitling her to heightened scrutiny and, instead, concluded that her employer had a rational basis for restricting it. *Id.* at 772. As such, I find that ruling to be inapplicable to the circumstances here.

Plaintiff further argues that the clear weight of authority from other Circuits is that long-term, monogamous romantic relationship, especially those involving co-habitations, are protected intimate relationships. Plaintiff relies primarily on *Wilson v. Taylor*, *supra*, 733 F.2d at 1542–44, which ruled that a dating relationship was an interest protected by the right to First Amendment freedom of association and, thus, was actionable under §1983. I note that case was decided before the Supreme Court distinguished between a right of intimate association and a right of association protected by the First Amendment in *Roberts v. U.S. Jaycees, supra*, and, as such, is not widely followed. *See generally Gilbert v. Bentsen*, 1995 WL 94640 (10th Cir. 1995) (unpublished opinion); *Swank v. Smart*, 898 F.2d 1247, 1252 (7th Cir.1990)(stating that *Wilson v. Taylor*, *supra* "was decided three weeks before [*Roberts v. U.S. Jaycees, supra*], and did not survive it"). Plaintiff also cites to case law from other Circuits that have found "non-marital, romantic relationships" were entitled to constitutional protection. *See Christensen v. County of Boone*, 483 F.3d 454, 463-465 (7th Cir. 2007)(finding that an unmarried heterosexual couple in a long-term relationship is a form of "intimate association" protected by the Constitution); *Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004)(a couple is engaged in a constitutionally-protected intimate association when they were living together, were romantically and sexually involved, and were monogamous).

In response, Defendants refer me to cases that have not recognized a constitutionally protected right to an extra-marital affair, dating relationship, or other romantic, non-marital

relationship. *See e.g. Beecham v. Henderson County,* 422 F.3d 372, 375 -376 (6th Cir. 2005) (finding an adulterous intimate relationship does not fall within the purview of constitutional protection); *Marcum v. McWhorter*, 308 F.3d 635 (6th Cir. 2002)(ruling that co-habitating with married woman is not a protected right of association); *Bates v. Bigger,* 56 Fed.Appx. 527, 2002 WL 31875633 (2nd Cir. 2002)(not selected for publication)(finding that a Deputy Sheriffs' extramarital intimate relationship was not clearly established as a First Amendment right to intimate association); *Baron v. Meloni*, 602 F.Supp. 614 (W.D.N.Y.1985)(holding that a police officer had no constitutional right under the First or Fourteenth Amendment to date someone against his Department's orders); *see also Plummer v. Town of Somerset*, 601 F.Supp.2d 358, 366 (D. Mass. 2009)(finding it is impossible to draw a principled line demarcating the point on the spectrum of dating relationships at which a romantic attraction is transformed from a dalliance into a prospective union worthy of constitutional protection).

Therefore, I find that the right claimed to have been violated here – an intimate association liberty interest based on a romantic, non-marital, co-habitating relationship – is not considered "clearly established" as there is no Supreme Court or Tenth Circuit case law on point, and Plaintiff has not demonstrated a consensus of cases of persuasive authority. *Ashcroft v. al-Kidd*, *supra*, 131 S.Ct. at 2084. Plaintiff has not presented me with convincing authority that places the constitutional question "beyond debate." *Kearns v. Bader, supra,* 663 F.3d at 1180; *Ashcroft v. al-Kidd*, *supra*, 131 S.Ct. at 2083. Thus, I conclude that Defendants Ridnour and Furrow are entitled to qualified immunity, and Plaintiff's §1983 claim against them must be dismissed because the right alleged to have been violated was not clearly established.

### III.  Defendant Board of County Commissioners of Kit Carson County

I next address the Motion to Dismiss filed by Defendant Board of County Commissioners of Kit Carson County (the "BOCC").  The BOCC asserts that I should dismiss Plaintiff's claims against it – Violation for Substantive Due Process Under §1983 and Violation of Lawful Off-Duty Activity under Colo. Rev. Stat. § 24-34-402.5 – pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  I agree with the BOCC that Plaintiff's §1983 claim against it must be dismissed.

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff.  *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007); *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).  A complaint will survive dismissal if it alleges a plausible claim for relief – that is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true.  Rather, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law."  *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.,* 555 F.3d 1188, 1192 (10th Cir. 2009)(*citing Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

The BOCC argues that the claims raised against it – based on Plaintiff's assertion that she was improperly terminated as the Victim's Advocate Program Director under the Sheriff's office – should be dismissed because the BOCC was not Plaintiff's employer.  Specifically, the BOCC

argues that under Colorado law, a County Sheriff is a distinct position that operates separately of the County in which he or she serves, and that County Sheriffs have exclusive control over the hiring and firing of their employees. *See* Colo. Const. Art. XIV, § 6 and § 8; Colo. Rev. Stat. § 30-10-506.  Plaintiff cites to *Bristol v. Board of County Commissioners*, 312 F.3d 1213, 1219-20 (10th Cir. 2002), which ruled that while the Defendant BOCC had the authority to adopt an overall budget for its Sheriff, such power did not give it the "right to force a constitutionally independent official to hire or fire an employee." *Id.* (*citing Schroeder v. Bd. of Cnty. Comm'rs,* 381 P.2d 820, 822-23 (Colo. 1963)).  Because the BOCC "has no control over the Sheriff's employees, the Board . . . could not fire [an employee] even for good cause" under Colorado law, and, thus, it was not liable for the employee's claim of discriminatory termination based on age. *Id.* (*citing Tunget v. Bd. of Cnty. Comm'rs,* 992 P.2d 650, 652 (Colo. App. 2000)).

Plaintiff argues, in response, that a municipal entity may be held liable under §1983 if the acts of the Sheriff may fairly be said to represent official policy. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(a plaintiff seeking to impose liability on a municipality under §1983 must identify a municipal "policy" or "custom" that caused the injury).  Plaintiff contends that because the Sheriff had final policymaking authority over her termination, the BOCC is liable for his alleged illegal decision to terminate her under §1983.

I first note that Plaintiff has not alleged that her termination was based on a specific or defined policy or custom.  A single employment decision by a County Sheriff cannot be deemed a "policy" that triggers municipal liability when there is no allegation that the municipality was the "moving force" behind the injury alleged.  *Board of County Comm'rs of Bryan County, Okl. v.*

*Brown*, 520 U.S. 397, 404-405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)(requiring a plaintiff to show that the municipal action was taken with the requisite degree of culpability, and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights). Moreover, the authority Plaintiff relies on to impute §1983 municipal liability to a County, based on the actions of its Sheriff, relate solely to the violations of constitutional rights for improper law enforcement activities. *See e.g. Ruegsegger v. Jefferson County Bd. of County Comm'rs,* 197 F.Supp.2d 1247, 1261 (D.Colo. 2001). Plaintiff has not referred to, nor has my research revealed, Colorado case law that imputes such liability for the actions of a Sheriff based on a single personnel decision. As such, I agree with the BOCC that Plaintiff has failed to state a plausible claim against it for damages related to the termination of her employment under §1983.

### IV.  Defendant William Korbelik

Defendant Korbelik's motion seeks dismissal of Plaintiff's state law claims asserted against him and the other Defendants, in the event that her sole federal claim under §1983 – raised against Defendants Ridnour, Furrow and the BOCC – is dismissed. Because I have ruled that Plaintiff's federal claim under §1983 must be dismissed, her state law claims are no longer supplemental to any federal question claim. As such, I declined to exercise jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(a)(federal district courts have supplemental jurisdiction over state law claims that are part of the "same case or controversy" as federal claims); 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). "[W]hen a district court dismisses the federal claims, leaving only supplemented state claims, the most common response has been to dismiss the state

claim or claims without prejudice." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)(citations omitted); *see also Villalpando ex rel. Villalpando v. Denver Health and Hosp. Authority,* 65 Fed.Appx. 683, 689 (10th Cir. 2003)(not selected for publication)(concluding that the district court abused its discretion in retaining supplemental jurisdiction over the state law claims).

ACCORDINGLY, I GRANT the Motions to Dismiss filed by Defendants Sheriff Tom Ridnour, Undersheriff Robert Furrow, and Defendant Board of County Commissioners of Kit Carson County [**Docs #19, #21 & #22**], and I DISMISS WITH PREJUDICE Plaintiff's federal claim for Violation of Substantive Due Process pursuant to 42 U.S.C. §1983 (First Claim for Relief).  In so doing, I declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims – pursuant to 28 U.S.C. § 1367(c)(3) – for Intentional Interference with Contract (Second Claim for Relief); Intentional Interference with Prospective Business Advantage (Third Claim for Relief); Civil Conspiracy (Fourth Claim for Relief); and Violation of Lawful Off-Duty Activity State pursuant to Colo. Rev. State § 24-34-402.5 (Fifth Claim for Relief).  Thus, I GRANT the Motion to Dismiss filed by Defendant William Korbelik [**Doc # 20**], and I DISMISS WITHOUT PREJUDICE Plaintiff's state law claims.

Dated: September  25 , 2012 in Denver, Colorado.

BY THE COURT:

 s/ Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE